Morning, Your Honors. I'd like to reserve some time for rebuttal. Inferences from facts alleged in the complaint and known to St. Paul as they might potentially evolve to sustain liability under any of the theories alleged support finding a defense for claims of implicit disparagement under the 01 and 02 St. Paul policies. Note that if you find potential coverage under the 01 policy, you need only confront the earlier version of the IP exclusion, which case law from this court evidences would not derail otherwise covered implicit disparagement claims, no matter what you make of the expansionary sentence in the St. Paul 2002 policy. Critical to this case is what are the facts for purposes of coverage analysis. We have a complaint. We have the admission of St. Paul that they reviewed, the actual press release reference in the complaint, and they were also directed to look at the website posting, which was. Directed by whom? By the complaint. The complaint said Ventana, September 24, 2002, newsleet and website posting was misleading, and they were directed by Counselor Ventana, who specifically stated that Digeen's claims in the Delaware Deceptive Trade Practice Act and Lanham Act, based on an allegedly false and misleading press release and website posting, required St. Paul to provide coverage, and that's at 474 of the excerpts of record. In response, they also had an occasion to review all of the evidence we submitted about how the case evolved subsequently, wherein Digeen clarified that this was a battle between two competitors over the right to this HPV probe technology. That was all in the complaint? That was not in the complaint. I didn't claim it was, but I'm pointing out that that was made available to St. Paul. When? If they're right that they only have to look at the allegations of the complaint, then it wouldn't make any difference what there is outside the complaint. So it helps me understand your argument, what you're talking about. They don't contest that they had to look at the press release. They admit that they did. They don't contest that they had access to the website. Right. So at this point, though, I mean, in time, you've tendered the first complaint, and it references the press release. And the website. And the website. So those are the three, at least as part of this analysis, forgetting any duty to go further, which is a different subject. Those are the four corners of evidence at that point. Well, I understand that that's where the Court's looking right now, but I want to suggest to the Court that on these facts you can look farther, and here's why. No, I understand that. But if you just stop for a second, do you contend that there's enough with that information to create a duty to defend? Yes. And tell me why. Well, first you should look at TriStar Theme Builders, Inc., which reversed by this Court on April 11, 2011. It's referenced in our 28J letter. The earlier district court decision, which the district court relied on in saying it didn't have to look very closely at facts beyond what was limited to the complaint. And there it said, the follow-up letter and its accompanying enclosures taken together provide sufficient information to trigger the obligation to defend. So here the content of the website, the content of the news release, are necessarily implicated. And so if you look at that content, here's what the content of the March 2, 2001 press release said. We are committed to building the Ventana franchise in the women's health market worldwide by providing unique organic tests. They also said, Ventana's Inform HPV high-risk and low-risk barbs are the first automated slide-based tests for HPV DNA, designed for the company's recently released benchmark system as the world's most automated histology instrument for proteins. They're saying we're unique. We're the first. That is contested by DiGene, who 18 days later, in its own press release, specifically questioned that and said they're the only product with FDA approval. So you have a typical fact situation, similar to a slander of title case, where there's a question about the right to control the marketplace. In the OSI case, there was a question about who owned technology for the Thermodyne oven. The court found that contest, based on the marketing statements of the parties, was sufficient to implicate disparagement. Indeed, if you look at the cases we've cited, mostly against St. Paul and Travelers, why is that? Well, it turns out that if they had bothered to look at all the facts as of the date of tender, St. Paul would have still said no. In fact, they clarified that fact at 360 of the transcript. They said if the court were to consider the extrinsic facts, all of the facts that came to light, in the coverage litigation, the outcome is no different because they do not show any covered claim. Why is that? St. Paul doesn't believe in anything except express disparagement. There is no implicit disparagement. Every one of these cases, they're still litigating, in 07 and 08, the doctrine of express disparagement. We did not expressly state in our statement that DiGene had no rights to market its product as exclusive because we challenged that. Because we didn't make that express statement, we're out of the box, as far as St. Paul is concerned. That's not the law. They keep losing on those cases. They concede at one point that, yeah, implicit disparagement may be colorable, but they don't think of the consequences of that for their coverage position. So in the Epiphany case against St. Paul in 2008, Judge Ware, now Chief Judge in the Northern District, stated the statement that Epiphany was the only component-based fully J2EE complete CRM suite available disparaged all others, including the claimant. That's all there was. It was a false advertising case. But factually, there was evidence of implicit disparagement because of the role that that statement played in the marketplace. If you then look at the actual statements that are made by counsel representing DiGene in framing the debate as to what was going on between the parties, it becomes evident and clear that there's a potential for coverage. And if you look at the Danenfeld case, it well sets forth Arizona law in these areas by talking about when facts are ascertainable by the insurer. Why is Danenfeld important? It dealt with Charles Keating debacle. It dealt with Lincoln Savings. All the national counsel in the country were in that case. So the level of jurisprudence applied to delving into the aspects of coverage law in Arizona was at a higher level than a lot of other decisions. Frankly, a lot of those early decisions from the Supreme Court of Arizona, opposing counsel relies on, are under school. They're homeowners' policies cases, very little at stake. They didn't have the level of thoughtful analysis necessary to reach these issues, nor had the concepts of implicit disparagement been developed at any time until a little bit more recently. Another case recently. Would you entertain a question? I'm sorry, Your Honor. I just wanted to have you focus on the Arizona law, not what you feel it should be, but what it actually is. As I understand it, the insurer has a duty to investigate under the complaint itself, the four corners of the complaint, and anything else the insured comes forward with added information. Now, is all of that you've been talking about here, was that information the insured came forward with? It referenced in its letter to the carrier, which asked it to clarify its denial, that the carrier should look at the website and should look at the press release. And the insurer did that. And the insurer purportedly did that. We don't know why they looked at it or what. But that statement of Arizona law is not complete, Your Honor, because it fails to note the Dan and Phil case, which clarified that in addition to those two things you mentioned, there's a third thing. And that is that in order to look at the Dan and Phil case, you have to look at the Dan and Phil case first. You have to look at pleadings that are inadequate and incomplete. And these pleadings are inadequate and incomplete in addressing the questions raised by the policy as to whether the facts here evidence a claim of potential disparagement. They have a lot of detail, but they don't have detail in the salient point of explaining the significance of those press releases. And in the last section of the Dan and Phil case, they mention facts as they might potentially evolve to sustain liability under any of the theories alleged. So what's your best, in the first complaint, what paragraph do you think gets you to the press release? Well, the best paragraphs are 63. Just a second here. Just a second here. Combine the 62, which is the tortious interference count, which talked about the direct and proximate result of the interference activity led to injury to Ventana, which is not based on patent infringement. It's based on conduct beyond patent infringement. Paragraphs 70, 76, and 80 are identical for those three counts, for unfair comp, free practice, and Lanham Act. It says, And third, under the fifth, sixth, and seventh counts, 65, 75, and 79, Ventana's September 2-4, 2002 news reads and website posting was misleading. Now, if you ---- You're talking about the Second Amendment complaint, correct? Yes. But the point is, I mean ---- Well, wait a minute.      It's a misleading complaint. It's a misleading complaint. It's a misleading complaint.      It's a misleading complaint. Well, what I'm saying is, that at this point, you haven't tendered the Second Amendment complaint. There are the same allegations in the First Amendment. Well, no. I'm asking you the First ---- in the First, you just want to make sure we're talking about the same thing and we're not passing them by each other. The First Amendment complaint doesn't have any reference to it. True? The First Amendment complaint has exactly the same allegations as the Second Amendment complaint. And the paragraph numbers may be slightly distinct. And I'm using the Second Amendment complaint because the First Amendment complaint was under seal when it was submitted. And so we didn't have it available until it was produced as part of the record of supplemental excerpts by St. Paul. But if you look at what the magistrate judge found, he found they were identical. So these allegations exist and were part and parcel of the First Amendment complaint. And they reference the website pointing and press release. And the press release takes us back to 2001 because it references that BATANA launched its informed HPV tissue test in the fourth quarter of 2001. So those facts get us to 2001. And in the 2001 period, we have this contest that is evident about whether we are even capable of selling an HPV probe. Initially, Digeen's view was that we couldn't do it at all and they were going to stop us by going to the FDA. That turned out not to work for them, so there was a Second Amendment complaint and they came back and asserted other claims. But the main thing to note for purposes of this implicit cover is if you look at the case. Was this because of the Beckman case? Well, Beckman was also a co-defendant. And so there were two Beckman relationships. The first was a manufacturing agreement in 01, and the second was a stock purchase agreement. In 01, they were still doing the same thing as 02. We were still promoting our probe, but the reason we had a right to do so legally changed because of our relationship to Beckman. In both instances, though, the conduct calling into question the exclusivity of the control that had previously been exercised by Digeen was challenged. And so in another case, talking about implicit and exposure and inferences, Michael Taylor v. Travelers, 2001, all the allegation says is customers were steered towards cheap synthetic knockoffs. And the Court inferred statements, presumably oral, that directed people to look at these purportedly inferior merchandise items. The one thing you won't find any discussion of in St. Paul's brief is inferences. They are very shy about talking about inferences. That is inconsistent with the law of Arizona, which requires inferences in favor of the insured. It is also the case that given uniquely their statement that you can look at all these facts and they don't make a difference, the Teletronic case comes into fashion here because it says it doesn't matter when the insurer learns about facts. If they would have created coverage, that has to be taken into account. They don't contest that under Arizona law, notice is a covenant, not a conditioned precedent, so it didn't matter when they learned the facts. So in this unique scenario, not for all cases, you can find that we're entitled to look well beyond the initial facts. I'd like to reserve a little time. Roberts. Thank you, counsel. Good morning. May it please the Court, Tom Crouch for St. Paul. Move your mic up, please. Thank you. Indulge me, Your Honor. I don't like reading things. It will be short because there's essentially one thing in the amended complaint, which, by the way, was the only complaint tendered to my client with a request for defense and indemnity. And it's paragraph 41. There's one thing in that complaint. Hold on, let me get there. That's on page SCR. That's the supplemental excerpts I filed, page 17. Okay. That's the only reference, the only thing, where there is some sort of utterance. And keep in mind, this whole case now is called down to the contention that the coverage, the personal injury coverage for disparagement is triggered by an allegation that Digeen made against Ventana. Okay? There's one utterance, one publication, one making known of something to the I won't read the whole thing, but it says, in a September 24, 2002 news release still available on Ventana's website, Ventana stated, quote, Ventana Medical Systems, I'll leave out a few words, today announced the acquisition of Beckman Couture, HPV business, and all corresponding assets for an undisclosed sum. This acquisition includes assignment of HPV intellectual property portfolio acquired by Beckman from Institute Pasteur through a 1991 sub-license agreement. Institute Pasteur recently sold HPV assets to another company. That's it. Okay. That is not an allegation that can, by any stretch, constitute disparagement. But more importantly, this coverage, the personal injury coverage, is offense-based coverage, and the policies apply only when it is committed during the policy period. Obviously, the only allegation in that complaint that makes reference to anything is this 2002 press release, which they say was still available on a website. The 2002 policy has an intellectual property exclusion, which says we don't cover any injury resulting from violation of various laws, intellectual property laws, including patent laws. It also has a clause that says, nor will we cover any other injury or damage alleged in a suit that also alleges patent infringement. This case was about patent infringement. That's what Digeen was suing Ventana for. Under that provision, all injury or damage alleged in that suit is excluded. This case, I hate to say this, I know a lot of attorneys get up and say this, but the case is that simple. Well, let's see if we can agree on a few things, or at least point out the areas of disagreement. Do you believe that the 2001 St. Paul policy provided coverage for a claim of implied disparagement? I don't believe a claim of implied disparagement was made. If you assume that, the answer is no. It would really help me if we just don't say, change my question to what you'd like it to be. We can talk about what it was made, because I understand your argument. But do you believe the 2001 policy provided coverage for a stated claim of implied disparagement? No, Your Honor. And how about the 2002? No, Your Honor. Okay. And do you think Arizona law has a cause of action for implied disparagement? I don't think Arizona tort law has ever even uttered those words, so it hasn't addressed that. So we don't know under Arizona law. And under your analysis of Arizona law, if I take your argument, you don't think that you have a duty to look beyond the complaint that is tendered to you by the insured, along with any other information. In other words, you're confined to the complaint and the information provided in terms of assessing the duty to defend. Until and unless an insured comes forward and makes some factual showing, and that's the advanced roofing case. Do you think that insurer has a duty to look at the pleadings to see if a subsequent amended complaint has been filed in the case, Arizona law? No, Your Honor. Okay. And under certain other states' law, insurers are required to perhaps, at least there's an argument that they're required to look at the case file. Now, I haven't seen that in Arizona law, and that's why I'm asking the question. Yeah, and I'm glad you asked the question, because Arizona, when advanced roofing announced that rule, it said, you know, we think Minnesota got it right. We think Minnesota's articulation of this duty to go on. And we've cited a couple of Minnesota cases and an Eighth Circuit case applying Minnesota law in addressing that, saying a carrier doesn't have some sort of ongoing obligation to go off and start searching discovery and figure things out. The burden has to be on the insured. Now, do your conception of Arizona law, do you think an insurer has a duty to defend a claim, even though it isn't separately set forth, but the facts of the complaint might contain the elements of that claim? I think that's a fair articulation of what Kepner said, which is you look in the allegations, and if the allegations state fact or theory, that is what you're looking for. Even if it's not separately set forth. Okay. So I think we're on common ground. Your argument is that this complaint, neither of the complaints contained a cause of action either expressed or implied for implied disparagement, right? That's right, Your Honor. Okay, and that's why I interrupted you, and I want you to be able to make your full argument. I just wanted to make sure we're proceeding on common ground. So tell me why you don't think that's so. Because disparagement requires a denigration of somebody or their goods or services. And at most, this complaint simply alleged that a press release was made in which Ventana announced to the world that it had acquired intellectual property in an asset purchase. And while there's been a mountain of case law presented, I would say that the two cases that most closely aligned themselves with that type of allegation, in other words, a statement proclaiming, I have intellectual property rights, the courts that have addressed those, Parkham v. Cincinnati and the Heritage Mutual case, both said that's simply not disparagement. By implication or otherwise, it doesn't disparage. There's been a lot of discussion about exclusivity and only, and we're the only one that can produce this. You don't find that allegation. Well, assuming there's a difference among jurisdictions about the elements or whether you recognize implied disparagement by saying I have the rights to it, where would we look in Arizona law to resolve that, whether that's a viable theory under Arizona law? I forgot it when you said there's nothing. There isn't an allegation of it. I mean, if you want to draw some conclusions from case law around the country about what implied disparagement is or disparagement by implication, you know, I think the best example is the two guys running for a mayoral race. And one of them could say, my opponent, Joe, is a liar and cheat and doesn't pay his taxes. That would be expressed disparagement. He said, Joe is, you know, it's disparagement. If he got up on the, you know, stump and said, I'm the only guy in this race that doesn't cheat and steal and fail to pay his taxes, doesn't mention anybody else, but by clear implication, it's the other guy. And don't forget, you don't imply the existence of disparagement. You have disparagement. You've got to have some sort of denigrating comment. The clear implication is about whom the disparagement is being made. That's where disparagement by implication comes. Now, I didn't read the policy for this language, so you'll have to refresh me on it. But I gather the policy contains the standard provisions that you'll defend, even if it's a frivolous complaint and so forth. So, really, the coverage doesn't depend on whether it's a viable theory or not. True? True. Okay. Your argument is that the theory is not asserted at all. True. Okay. The last point I want to make is there's this reference to 2001 press releases. The problem with that is twofold or threefold. One, the thing that they've cited, if you go read it, find it buried in the material, it's not disparaging. It doesn't contain any sort of disparaging statement. But more importantly, Digeen, the underlying plaintiff, never – there's no indication that he ever made any claim or had any allegations that had any reference to these September – or, excuse me, March 2001 press releases. This is Ventana trying to make arguments against itself. It's formulating claims against itself to try to trigger coverage that Digeen itself never made. I think I said three. Obviously, I've forgotten what the third point was. Those two are probably good enough on this reference to the 2001. Okay. Your 2001 contract and 2002 contracts, as far as exclusions are concerned, are they different? The key difference is that IP exclusion, the intellectual property exclusion. The 2002 policy added that additional phrase, nor will we cover any other injury or damage alleged in a suit that also alleges patent infringement. So if, in fact, the 202 contract exclusion holds up, you don't have to worry about coverage because it's going to be stopped with the exclusion. But that's not the case with 201. It is our position that the 2001's IP exclusion, even without that phrase, precludes coverage, and the lower court correctly so ruled. Yeah. It's a closer question. I'll concede to you it's a closer question, but I think the question comes out the same way, because in this case, keep in mind, you can't divorce yourself from what is actually being alleged by DIGENE, and what they're saying is you made this announcement to the world that you acquired these intellectual property rights, which include the sublicense rights under the patent that's at issue. Well, all of the injury alleged in that complaint, including injury alleged from misrepresenting to the world that you've acquired patent rights, are still – is still injury resulting from violation of patent laws or other intellectual property laws within the meaning of that exclusion. So if you're right, you don't need to worry about coverage because, under your argument, it would be excluded under either contract. That's correct. And the lower court so correctly ruled, and I would urge the court to follow the Parkham decision in that case, because it had that narrower form of the intellectual property exclusion. And, again, the nature of the misrepresentation beast in that case was a proclamation that the insured had intellectual property rights. Okay. Any further questions? Anything else you want to add? I'm asking for affirmance top to bottom, including the award of attorney fees. Actually, I will make one quick point on that. I've got a minute left. I won't take it. I believe that the opening appellant's brief conceded that the proper standard of review is abuse of discretion. The reply brief has now said, oh, no, no, the review of the attorney fee award is de novo. I couldn't disagree more. The law here that allowed an award of fees is Arizona's attorney fee statute 12-34101, which allows an award of fees in a claim based on contract. The law in Arizona is clear that under that statute, the court applies exercises its discretion in considering a number of factors and decides whether to award it or not. And obviously, on an appellate review, the standard review is simply abuse of discretion, and there plainly was none in this case. And I'm also asking for this Court to exercise its discretion under the same statute to award fees on appeal. Have you brought a motion to that effect? The latter. I have requested it in my brief. I would follow the rules upon affirmance of the case and follow the appropriate papers. So we may not have that issue before us in any way if there's been no motion filed. Okay. Thank you. Thank you for your argument. Your Honor, as to the very last point, we cited in our reply brief, Jorgensen, a Ninth Circuit-published opinion that said we review the district court's interpretation and application of a State statute governing the award of attorney's fees de novo. I mean, I think we review the law, application of law de novo and the determination of facts. Right. But I understand. But you'll find that it's basically a law issue if you look carefully at the nature of the award. If you look at the supplemental experts record and the amended complaint, you'll see all the allegations I've been referencing are in there, and they have undersourced the possibility of coverage by not referencing those for you yet again, but included on counts 7, 8, and 9 of the amended complaint are the statement that Tana's September 24, 2002, news release and website posting was misleading. And if you look at the website, it references that 2001 dissemination. Look at Epiphany and Michael Taylor. Those cases are indistinguishable. The Parkham heritage case and heritage cases both assumed that you had to have express disparagement. Those cases follow old technology. They are not the law anymore. They are an expression of what the law is no longer. The other thing to bear in mind is that St. Paul continues to lose this argument of the appellate courts. In the Acme case, they said that the mere statement, and this went up to the Seventh Circuit in 2007 applying Wisconsin Act, the mere statement that scissors were titanium-based could not disparage a competitor that had stainless steel. The Court found otherwise, found implicit disparagement because of the nature of the marketplace. That same understanding of what the marketplace here is right in all of these situations. Look at page 382 of the transcript. It's Digeen's counsel's explanation of this suit. It said one statement from Digeen, Bentana, Digeen is the enemy. That's the type of conduct that destroyed Digeen's exclusivity and their claims to exclusive rights under the guise of an illegal license agreement. Digeen had exclusivity in the marketplace. That's what this case was about. It's very similar to a slander of title case. Look at my last 28J letter referencing the ComSat case, which was an antitrust case where the Court found that tortious interference claim had within it buried disparagement facts evidencing a potential for coverage. There was a very strong analogy between a slander of title situation and a disparagement situation where one questions the legal rights and products emanating from an entity whose right to do that which they claim is called into question because you are claiming they're a liar, basically, that they cannot say what they claim to be, the exclusive source of a particular product in the marketplace. That's what this case was about. The notion that this is only a patent case is really ridiculous given that there's about a zillion counts that talk about our marketplace behavior. St. Paul is continually hit in the ground to avoid having to face these issues. If you look at its second letter denying a defense, it's all conclusionary statements. That's inconsistent with this Court's view in the Lutz case that you have to give an explanation, an analytic explanation. Had they done so and said we only we don't believe in implicit disparagement, we would explain what it is and why we think they're wrong. We didn't have that occasion. That last sentence in that letter said, well, you can go give us additional facts, but they didn't say what those facts would be, why they would be relevant or important. You cannot reverse delegate the duty to evaluate coverage to insured, hiding under the guise we've recited all the provisions of the policy, that's all you're entitled to. The other thing to bear in mind is as to that exclusion in 2002, we think it's not conspicuous, plain and clear. The molecular bioproducts case, which is the only case out there they're citing, didn't look at that issue. Why not? Because they don't tell you anywhere in that provision. I think now you're going beyond the scope of the bottle. It's in my briefings. Thank you very much for your arguments. The case just heard will be submitted for decision and will be in recess for the morning. All rise.
judges: George, Wallace, Thomas